UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CLAUDE JACKSON,
                    Plaintiff,

v.                                              1:05-CV-01061 (NPM)

MICHAEL J. ASTRUE,[1]
Commissioner of Social
Security Administration,
                    Defendant.
-----------------------------------------------------------------------------------------------------
APPEARANCES                             OF COUNSEL

Buckley, Mendleson & Criscione, P.C.        Ira Mendelson, III, Esq.
Attorney for the Plaintiff
29 Wards Lane
Albany, N.Y.        12204-3107

Office of the United States Attorney         William H. Pease, Esq.
Attorney for the Defendant
100 South Clinton Street
Syracuse, NY 13261-7198

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

Plaintiff Claude Jackson ("plaintiff") brings this action pursuant to §205(g)

of the Social Security Act (the "Act"), codified at 42 U.S.C. §§ 405(g).  Plaintiff

seeks review of the final decision of the Commissioner of the Social Security

---

[1]        On February 12, 2007, Michael J. Astrue became the Commissioner of Social
Security and is substituted for Commissioner Jo Anne B. Barnhart as defendant in this action.
Fed.R.Civ.P. 25(d)(1).

Administration ("Commissioner") denying plaintiff's claim for disability insurance benefits ("DIB") under the Act.  Specifically, plaintiff alleges that the decision of Administrative Law Judge ("ALJ") John T. Yeary in denying plaintiff's application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that the ALJ's decision was supported by substantial evidence.  For the reasons set forth below, the court finds that substantial evidence supports the ALJ's decision.  Accordingly, the decision of the Commissioner is confirmed.

## I.    PROCEDURAL HISTORY and FACTS

Plaintiff, who worked as a farm machine mechanic (Tr. at  117), was at his workplace on December 9, 2002 when he bent over to weld some equipment and injured his back. Tr. at 174-75; 142.   The following recitation of the procedural history and facts of this case are taken from the complaint, trial briefs, and the administrative record.  Where the parties' rendering of the facts differs from the record, where facts are omitted, or in the interest of clarification, the facts will be supplemented as needed by undisputed facts from the record.

## A.    Procedural History

On September 19, 2003, plaintiff filed an application for Social Security Disability Benefits ("DIB"), alleging disability due to back problems stemming from the December 9, 2002 workplace incident. Tr. at 42-4. Plaintiff's application was denied. Tr. at 34-7. Plaintiff made a timely request for a hearing before an ALJ. Tr. at 38. The hearing was held on September 30, 2004. On October 25, 2004, the ALJ issued a partially favorable decision, finding that plaintiff was disabled for a closed period of time from December 9, 2002 to April 12, 2004, but after April 12, 2004, "the claimant was not under a 'disability,' as defined in the Social Security Act (20 C.F.R. § 404.1520(g))." Tr. at 23. Plaintiff appealed the ALJ's decision. On July 29, 2005, the Appeals Council denied plaintiff's request for review. Tr. at 4-6. Plaintiff asked for court review of the ALJ's decision by filing this civil action.

## B.    Facts

At the time of the ALJ's decision, plaintiff was a 51-year-old male, with a date of birth listed as January 29, 1953 (Tr. at 17, 42). Following the workplace incident set forth supra, plaintiff was seen on December 10, 2002 by Stephen Strasser, M.D., at the Sharon Springs Health Center. At that time, Dr. Strasser advised plaintiff to apply moist heat and liniment, and to take ibuprofen for pain.

Tr. at 129.  On January 21, 2003, Dr. Strasser prescribed the muscle relaxant Flexeril for pain. Tr. at 127.

Dr. Strasser referred plaintiff to Century Imaging for a lumbar MRI on February 3, 2003, which revealed "multi-level degenerative disc and facet disease as described [2] (mild)" and "left sided somewhat broad based L4-5 disc herniation. The lesion effaces the left anterolateral thecal sac at the origin of the left L5 nerve root and narrows the proximal left neural foramen."  The MRI also indicated "left sided eccentric disc bulging at L5-S1." Tr. at 131.  Plaintiff was referred for a neurosurgical consultation, and on February 12, 2003, plaintiff was evaluated by Gregory Frevele, RPA-C,[3] and John Wahlig, M.D.   Plaintiff was diagnosed as having "improved low back and left leg pain that responded well to conservative measures.  MRI reveals evidence of a far lateral left L2-3 disk [sic] herniation as well as a broad-based left-sided L4-5 bulging/herniation with a foraminal component, the latter of which is likely the etiology of his current complaints.  As long as he is continuing to improve it is not felt that there is any indication for consideration of neurosurgical intervention at this time ...." Tr. at 143.  Dr. Wahlig reevaluated plaintiff again on February 22, 2003, and recommended physical

---

[2]    As described at Tr. at 130.

[3]    Registered Physician Assistant - Certified

therapy for low back conditioning and strengthening, which plaintiff said had helped him previously. Dr. Wahlig noted that if plaintiff's symptoms didn't lessen with physical therapy, plaintiff might need epidural steroid injections. Tr. at 137.

On March 17, 2003, plaintiff was examined by Dr. James W. Nelson pursuant to his Workers' Compensation claim. Dr. Nelson stated that plaintiff "impresses me as a person in considerable discomfort." Dr. Nelson diagnosed a left L4-5 disc herniation with a left radicular component, causally related to the December 9, 2002 incident[4], and opined that plaintiff had a marked, partial and temporary disability. Tr. at 117-19.

On April 25, 2003, Dr. Strasser provided plaintiff's counsel with a functional ability assessment that stated that plaintiff had a moderate-marked causally related partial disability in the degree of 66 2/3%. Dr. Strasser also added work restrictions of "no lifting or bending," and "no prolonged sitting." Tr. at 164. At a followup visit on June 5, 2003, Dr. Strasser wrote, "[w]ill see if we can improve things with nerve-altering medications and longer acting NSAIDS ... Of note, after the visit, patient walked out of the room quite comfortably." Dr. Strasser prescribed a combination of Neurotin and Peroxicam. Tr. at 123-24. On

---

[4]       Dr. Nelson inadvertently wrote 09/12/02 but context indicated he was referring to plaintiff's December 9, 2002 injury.

his followup visit to Dr. Strasser on July 14, 2003, plaintiff reported that he was feeling better. Tr. at 123.

On August 5, 2003, plaintiff returned to Dr. Nelson for assessment, who noted that plaintiff was no longer having physical therapy.  After examination, Dr. Nelson found a moderate, partial and temporary disability. Tr. at 113-15.  Dr. Nelson opined that although he couldn't state when plaintiff would be able to return to his regular job, "plaintiff should be able to return to a clerical or sedentary job.  He could perform any job that did not require him to repeatedly bend to reach items less than 24 inches off the floor or lift anything heavier than 30 pounds." Tr. at 115.

On a September 18, 2003 office visit, Dr. Strasser wrote that plaintiff was "really no better."  Plaintiff had increased his pain medication Neurontin to 300 mg. three times a day but found that it made him sleepy during the day. Plaintiff was complaining of muscle spasms and tightness.  Dr. Strasser opined that the pain was muscular or tendinous in etiology.  Dr. Strasser decreased the Neurontin to 200 or 100 mg. three times a day, and suggested massage or whirlpool therapy to relax plaintiff's muscles.  Tr. at 122.

On November 20, 2003, plaintiff returned to Dr. Strasser for followup of back pain.  Plaintiff reported that he had seen Dr. Wahlig, who stated that there

were no good surgical options.  Dr. Wahlig sent plaintiff back to physical therapy.

Plaintiff reported that he had good days, then suddenly, without any warning or

increased activity, he would have severe increased back pain.  Dr. Strasser advised

plaintiff to wean himself off the Neurontin as plaintiff did not feel that the

Neurontin was making any difference.  Dr. Strasser advised plaintiff to continue

physical therapy and take his Peroxicam only as necessary, instead of daily.  Tr. at

121.

A physical therapy progress note dated November 24, 2003 stated that

plaintiff continued to report decreased pain levels.  On November 28, 2003,

plaintiff reported "two good days in a row." Tr. at 139.

On January 6, 2004, plaintiff was examined by Dr. Richard Adler at the

Commissioner's request.  Dr. Adler found a history of herniated discs at L4-5, and

moderate obesity, and opined that plaintiff was "mildly limited in his ability to

perform activities involving lifting or prolonged standing at this time." Tr. at 148.

On February 26, 2004, Dr. Strasser reported "chronic low back pain, some

slow improvement ... he remains moderately disabled and is unable to perform

work that requires frequent lifting or bending, prolonged standing." Tr. at 162.  On

March 2, 2004, Dr. Strasser again reported to plaintiff's attorney that plaintiff had

a moderate-marked causally related partial disability in the degree of 66 2/3%.  Dr.

7

Strasser wrote, "No lifting or repetitive bending," and [what appears to be] "Light level work only."  Tr. at 161.

On April 12, 2004, plaintiff was seen by Dr. Strasser for a followup of back pain.  Plaintiff stated that he was not feeling a significant difference, and had good days and bad days.  Dr. Strasser wrote, "Chronic back pain.  Things have stabilized.  I do not feel it is likely that he will improve in the near future.  He is contemplating a return to work, which I think is reasonable with light duty and appropriate restrictions and gradual increase in his activities."  Tr. at 160.

On June 16, 2004, Dr. Nelson re-examined plaintiff, and noted that "the examinee readily admits that he is much better.  He still has some residual back pain but he no longer has any pain radiating into his left leg."  Dr. Nelson diagnosed "[s]ubsiding L4-5 disc herniation." Tr. at 158.  Dr. Nelson concluded that "the examinee has a mild degree of disability causally related to the 12/09/02 work related incident.  No further treatment is necessary in my estimation.  The examinee can return to any job provided he does not have to lift repeatedly items weighing heavier than 30 to 35 pounds, and [does] not have to bend to reach things repeatedly that [are] less than 24 inches off the floor." Tr. at 159.

Subsequent to the hearing in front of the ALJ, plaintiff submitted a December 21, 2004 physical capacity evaluation from Dr. Strasser, reflecting that

in an 8-hour workday, plaintiff could sit, stand and walk one to two hours at a time per day, and during the entire day, plaintiff could sit, stand and walk for three hours.  Dr. Strasser indicated that "[t]he disability requires the claimant to change positions often (alternate between sitting, standing, lying) at irregular intervals to relive pain."  He indicated that "[i]f the claimant were employed in a sedentary job, he would have to leave his work station periodically (at least once every hour) to move about and stretch his legs and back."  Dr. Strasser also listed plaintiff's pain as moderate. Tr. at 167.

## II.    DISCUSSION

### A.    Standard of review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004);  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "The Act must be liberally applied, for it is a remedial statute intended to include [,] not exclude." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).

**B.    Disability Defined**

An individual is considered disabled for purposes of his or her eligibility for Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security Disability to be disabled

10

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned statutory definition. <u>See</u> 20 C.F.R. § 404.1520. The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the

11

residual functional capacity[5] to perform [his] past
relevant work. Finally, if the claimant is unable to
perform [his] past relevant work, the Secretary
determines whether the claimant is capable of
performing any other work. If the claimant satisfies [his]
burden of proving the requirements in the first four steps,
the burden then shifts to the Secretary to prove in the
fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d
41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational
factors (the claimant's age, education, and past work experience), and to determine
whether the claimant is capable of performing other jobs existing in significant
numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615
(S.D.N.Y. 2007) (internal quotations omitted).

As a threshold issue, the court emphasizes that 42 U.S.C. § 423(d)(1)(A)
specifically states that a person is deemed disabled if he or she is unable to engage
in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of not less than twelve

---

[5]      Residual functional capacity ("RFC") refers to what a claimant can still do in a
work setting despite any physical and/or mental limitations caused by his or her impairments and
any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the
relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

months.  Substantial work activity is defined as "work activity that involves doing

significant physical or mental activities.  Your work may be substantial even if it

is done on a part-time basis or if you do less, get paid less, or have less

responsibility than when you worked before."  Gainful work activity is defined as

"work activity that you do for pay or profit.  Work activity is gainful if it is the

kind of work usually done for pay or profit, whether or not a profit is realized." 20

C.F.R. § 404.1572(a) and (b).

### C.    Analysis

Plaintiff argues three issues before the court. First, plaintiff argues that the

Appeals Council committed reversible error in refusing to remand this claim in the

face of the attending doctor's post-hearing statement of residual capacity.  Second,

plaintiff argues that the ALJ's decision, i.e., finding the plaintiff not disabled after

April 12, 2004, is lacking in substantial evidence and is contrary to law.  Finally,

plaintiff argues that the ALJ improperly evaluated plaintiff's credibility, and did

not consider the plaintiff's allegation of pain and the resulting limitations.  The

court considers each argument below.

### 1.    Alleged Reversible Error by the Appeals Council

Plaintiff relates that after the ALJ's decision, plaintiff appealed that decision

to the Appeals Council on November 9, 2004.  In that appeal, plaintiff argued that

Dr. Strasser's assessment of "light duty" was vague, and consequently it could not be determined if Dr. Strasser's assessment of his patient's ability to perform light duty was the same as the light work definition in the Social Security Regulations. Plaintiff now argues that pursuant to the SSA medical/vocational grids, "for an individual over 50 years of age with no transferable skills, the difference between being able to perform 'sedentary' as opposed to 'light' work is essentially the difference between being disabled and being not disabled." Doc. No. 5, p. 10.

Plaintiff obtained the physical capacities evaluation form, referenced above, from Dr. Strasser, dated December 2, 2004, and submitted it to the Appeals Council on December 16, 2004. Plaintiff included a further request to the Appeals Council, asking that it remand the case based on Dr. Strasser's specific limitations, which plaintiff argues would make even sedentary work questionable. Plaintiff argues that "[a]ny ambiguity concerning the doctor's opinion was resolved by this assessment." Id., p. 11. Plaintiff argues that the ALJ was "under a duty to scrupulously develop the record giving due regard to the opinion of the treating doctor and appropriately discounting the opinion of a doctor who is hired by a party which has a vested interest in minimizing the Claimant's condition." Id., p. 11-12.

The Commissioner argues that "[w]here new and material evidence is

14

submitted to the Appeals Council, as here, the Appeals Council will consider additional evidence only where it relates to the period on or before the date of the ALJ's decision, and will then review the case if it finds that the ALJ's conclusion is contrary to the weight of the decision." Doc. No. 6 at 17 (citing 20 C.F.R. §§ 404.967[6] and 404.970).  The Commissioner argues that Dr. Strasser's 2004 opinion is not material because it was rendered two months after the date of the AlJ's decision, does not appear to relate back to the relevant period, and thus, was not relevant to the period at issue before the ALJ.  The Commissioner proffers that it is conceivable that the plaintiff experienced new injuries or aggravations of his older ones after the ALJ's decision, and that this could be the basis of Dr. Strasser's opinion.  The court concurs, and notes that the facts of this case, as set forth above, show a timeline of continual improvement in plaintiff's condition up to and including the time of the hearing.  Dr. Strasser's December 2004 opinion is an anomaly based on that timeline.  The Commissioner correctly asserts that

---

[6]     Section 404.967 states in pertinent part that "[i]f you or any other party is dissatisfied with the hearing decision or with the dismissal of a hearing request, you may request that the Appeals Council review that action...."  Section 404.970(b) states that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.967 and 404.970 (West 2009).

"while Dr. Strasser's opinion should not be considered as part of plaintiff's current application for benefits, plaintiff may nonetheless file a new application based upon Dr. Strasser's report." Doc. No. 6 at p. 19.  The court finds that there was no reversible error in the Appeals Council's failure to remand based on Dr. Strasser's post-hearing opinion.

2.      Allegation of Insubstantial Evidence

Plaintiff argues that the ALJ committed several errors of law in his decision of October 25, 2004.  Specifically, plaintiff argues that the ALJ relied principally on two medical reports to find that claimant was able to perform light work, one made by an "adversarial" doctor hired by an insurance company [Workers' Compensation] and the other report made by plaintiff's treating physician that was too vague to allow a valid judgment to be made. Doc. No. 5 at pp. 12-14.

The Commissioner argues that substantial evidence supports the ALJ's decision, and asserts that "a longitudinal review of Dr. Strasser's opinions reveals that he imposed fewer and fewer restrictions on plaintiff as time passed." Doc. No. 6 at p. 13.  Without reiteration of the facts set forth above, the court finds there is substantial evidence in the record, compiled from all medical reports as well as the plaintiff's own statements, that affirms the ALJ's decision that the plaintiff was disabled for a finite period of time, and slowly and steadily improved to the point

that he was no longer disabled pursuant to the Act.

       3.      Alleged Erroneous Credibility Assessment

     Finally, plaintiff argues that the ALJ failed to properly assess the plaintiff's

credibility, specifically, that the ALJ didn't consider plaintiff's complaints of pain

and resulting limitations.  The law is clear on the ALJ's discretion on the issue of

pain alleged by a claimant.

> The ALJ has the discretion to evaluate the credibility of a
> claimant and to arrive at an independent judgment, in
> light of medical findings and other evidence, regarding
> the true extent of the pain alleged by the claimant.
> Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). If the
> findings "are supported by substantial evidence, the
> court must uphold the ALJ's decision to discount a
> claimant's subjective complaints of pain." Aponte v.
> Secretary, Dep't of Health & Human Services, 728 F.2d
> 588, 591 (2d Cir.1984) ... Where a claimant alleges
> symptoms of a greater severity of impairment than can be
> shown by objective medical evidence, other evidence
> will be considered, including claimant's daily activities
> and the medications, methods and treatments used to
> alleviate [his] symptoms. 20 C.F.R. § 416.929(c)(3). It is
> the function of the Commissioner, not the reviewing
> court, to "resolve evidentiary conflicts and to appraise
> the credibility of witnesses, including the claimant."
> Caroll v. Sec'y of Health and Human Serv., 705 F.2d
> 638, 642 (2d Cir.1983).

Snyder v. Astrue, 2009 WL 3381556 at * 7  (N.D.N.Y. 2009).

     Plaintiff argues that the ALJ failed to consider plaintiff's hearing testimony

regarding pain.  Defendant argues that the ALJ properly considered plaintiff's allegations of pain and functional limitations by considering factors set forth in the ACT such as daily activities, medications taken for pain, statements that the plaintiff could lift forty pounds, and so forth.  The ALJ found that the plaintiff's allegations were credible for the closed period of disability from December 9, 2002 until plaintiff's treating physician released him for light work on April 12, 2004, but not credible as to the argument that he was still disabled after he was released to go back to work.

Plaintiff also argues that the ALJ was in error in his assessment of plaintiff's credibility by considering that plaintiff began receiving unemployment benefits in May of 2004 and was thus holding himself out as able to work. Tr. at 19.  Plaintiff argues that he pointed out both at the hearing and in the subsequent appeal that "there is no inconsistency for an individual who is over 50 years old between receiving unemployment benefits and Social Security Disability benefits." Doc. No. 5 at p. 16.  However, plaintiff submits no law for this premise in his brief, nor did he submit any law to bolster his point at the hearing or in his appeal. Defendant did not specifically address the issue of the unemployment benefits in that portion of his brief dealing with credibility.

Courts in this circuit have considered a plaintiff's receipt of unemployment

benefits for the premise that "the record establishes that Plaintiff was able to work
before [his disability onset date] as evidenced by Plaintiff's receipt of
unemployment benefits, which requires an ability to work." Rich v. Comm. of
Social Sec., 2009 WL 2923254 at * 1 (W.D.N.Y. 2009).  Moreover, courts
throughout the United States have held that the issue of a plaintiff claiming to be
disabled yet drawing unemployment insurance benefits may be considered in
determining a plaintiff's credibility.  See, e.g., Schmidt v. Barnhart, 395 F.3d 737,
746 (7th Cir. 2005),which stated that "[plaintiff] contends that the ALJ erred when
he included [plaintiff's] application for and receipt of unemployment
compensation benefits among a long list of factors adversely affecting [plaintiff's]
credibility regarding his subjective complaints ... while we have previously held
that 'employment is not proof positive of ability to work,'  we are not convinced
that a Social Security claimant's decision to apply for unemployment benefits and
represent to state authorities and prospective employers that he is able and willing
to work should play absolutely no role in assessing his subjective complaints of
disability." Id. (citing Wilder v. Apfel, 153 F.3d 799, 801 (7th Cir.1998)).  See
also Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991): "We also note that
[plaintiff's] application for unemployment compensation benefits adversely affects
his credibility.  A claimant may admit an ability to work by applying for

19

unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work ... because his application indicates that [plaintiff] was able to work, this may be some evidence, though not conclusive, to negate his claim that he was disabled ...." Id.  In the Sixth Circuit, the court of appeals held that "this court recognize[s] the inherent inconsistency in filing for disability benefits and unemployment benefits. Although Plaintiff argues that this inconsistency should not be embraced, she offers no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work." Bowden v. Comm. of Social Sec., 174 F.3d 854, 1999 WL 98378 at *8 (6th Cir. 1999).  Accordingly, the court finds that although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ properly considered plaintiff's claim for unemployment benefits when assessing plaintiff's credibility.  Thus, the court finds no reversible error in the ALJ's consideration of plaintiff's application and eligibility for unemployment benefits.

Finally, plaintiff claims that the ALJ failed to consider plaintiff's long work history in determining plaintiff's credibility.  The court notes that the ALJ makes mention of plaintiff's relevant work history (Tr. at 20) but fails to specifically

mention plaintiff's twenty two years as a farm equipment mechanic in the credibility assessment.  As stated above, the ALJ ultimately found that plaintiff's testimony that he was disabled for the closed period set forth above to be credible, but found plaintiff's testimony that he was disabled after his treating physician released him to return to light duty was less than credible. Tr. at 19.  Plaintiff argues that "the ALJ committed reversible error in failing to consider the Claimant's excellent work record in evaluating his credibility" (Doc. No. 5 at p. 17), yet does not submit proof of specifics of an excellent record beyond a recitation of the longevity of plaintiff's employment.

"A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d.Cir 1983).  The premise for this finding in Rivera was that evidence of a desire to return to work would emphasize the positive value of a long employment history. Id.  However, in the case at bar, plaintiff would not be returning to his previous, familiar job, and at the time plaintiff was released by his treating physician to return to light duty work, plaintiff had been receiving Worker's Compensation benefits for a period of two years while he was unable to work, factors that might lessen the plaintiff's desire to return to work.  The court finds that if the ALJ failed to consider plaintiff's work history as one factor in his

consideration of plaintiff's credibility, it is harmless error, and substantial evidence in the record affirms the ALJ's credibility assessment.

## III.    CONCLUSION

For the reasons set forth above, the court affirms the findings of the Administrative Law Judge.  Accordingly, the Commissioner's motion on the pleadings is hereby GRANTED.  The plaintiff's complaint is DISMISSED with prejudice.

SO ORDERED.

November 10, 2009.

_____
Neal P. McCurn
Senior  U.S. District Judge